This suit involves a contest over the ownership of a mule. The plaintiffs, ten in number, are the children of John H. Crain, deceased. They claim ownership of the *Page 405 
mule by inheritance from their deceased father. They allege in their petition that, regardless of their ownership of the mule, T.A. Crain has possession of it and refuses to deliver same to them although amicably requested to do so.
They allege that the mule, a gray mare mule, weighing between 900 and 1000 lbs. and about fourteen years old, is worth the sum of $150. They allege further that they fear that the defendant will conceal, part with or dispose of the mule during the pendency of the suit and pray for a writ of sequestration. They ask to be decreed the owners of the mule and that it be delivered to their possession. In the alternative they pray that should the mule have been disposed of by the defendant, that they recover judgment in the sum of $150 against him.
The court granted an order for sequestration under which the mule was seized but immediately thereafter the defendant bonded the writ.
In his answer the defendant denies all the allegations of the petition of the plaintiffs and alleges that he is the owner of the mule in question, having purchased the same seven years before from one Rex Culpepper for the sum of $375, cash. He alleges that he has remained the owner of the mule since the date of its purchase and that John H. Crain, the father of the plaintiffs, had no claim whatsoever on the mule.
After trial in the court below there was judgment in favor of the plaintiffs decreeing them to be the owners of the mule and ordering it to be delivered to them and further judgment maintaining the writ of sequestration which had issued. The defendant has taken this appeal.
[1] From the evidence found in the record we learn that John H. Crain and the defendant were brothers and apparently were attached to each other. They were in business together and trusted each other to the extent that they kept no records of their business dealings whatever and therefore there is no written evidence at all concerning the purchase or ownership of the mule in question. The burden of proof was on the plaintiffs to establish their claim of ownership and whilst the district judge stated that he realized that to be so, he nevertheless recognized the fact that in every case, the evidence must be considered in the light of and consistent with all the circumstances surrounding the question at issue, and, viewed in this light, he said that he could reach no other conclusion than that the plaintiffs were the owners of the mule.
The testimony of the defendant to the effect that he had purchased the mule from Culpepper seven years before is true. He alleges in his answer that he had paid $375 for the mule but in that he was mistaken and evidently meant that that was what he paid for this mule together with another mule at the same time. His testimony in that regard is substantiated by that of Mr. Culpepper who testified that about 1939 Mr. T.A. Crain did purchase two mules from him for which he paid the sum of $385. He identified one of the two mules as the one involved in this litigation. This testimony establishes the original ownership of the mule by Mr. T.A. Crain unless it be that in their transactions which, he himself testified, existed between himself and his deceased brother John Crain, the mule had been purchased for their joint account. Of course Mr. John Crain was no longer alive and his children were unable to dispute the fact of the purchase by their uncle, Mr. T.A. Crain, of the two mules. That, if anything, constitutes the one weakness in their case.
However, like the district judge, we find that the other facts and circumstances which were developed in the trial by the testimony of the plaintiffs, and not seriously contradicted by the defendant, tend to show that at some time or other Mr. T.A. Crain, either parted with the title to the mule in favor of his brother or there was some understanding or agreement between them that the mule belonged to his deceased brother.
The record establishes the fact that Mr. T.A. Crain worked the mule very little himself, and up until the time of the death of his brother, seldom had possession of it. On the contrary it is shown, and admitted by him, that during most of the time following its purchase, the mule was at his *Page 406 
brother's, being used by him on his farm or being rented to other parties for as long as two years at a time, or again being used by his brother's son in working his farm. All rent for the mule was collected by John Crain or his son.
Mr. T.A. Crain, according to the testimony of the plaintiffs, never laid claim to ownership of the mule during all that time and it was only a few days prior to the death of his brother that he took the mule and had it brought to his place. Even then it cannot be said that he made claim of positive ownership because when his nephews and nieces came to see him about it, he told them that he would let them have it if they would agree to reimburse him for a fertilizer bill which he claimed their father owed him. It appears further that he even sent an emissary to them with the sum of $150 cash to give them for the mule provided that they would agree to reimburse him the fertilizer bill he claimed and which amounted to the sum of $102. He now attempts to explain his actions by saying that he was trying to help his nephews and nieces to straighten out their business but, as stated by the district judge, it does seem strange that if he actually owned the mule, as he claims, he should have been offering to give them $150 for property which actually belonged to him. It would have been more reasonable, in our opinion, had it been his intention to help them, to remit the fertilizer bill and keep the mule if it was his.
We do believe that Mr. T.A. Crain, as he testified, was devoted to his brother, no doubt helped him out during his sickness, and meant to do the right thing by his children, after he died. Still, what we are concerned with in this suit is the question of the ownership of the mule and in our opinion he has not satisfactorily explained his action in having offered to buy it back from them on condition that they pay him a bill he claimed was due by their father. He had no right to hold possession of the mule as a threat with which to prevail on them to pay the bill he claimed was due by their father's estate.
[2] We believe that the trial judge has correctly resolved the question of fact presented in the case in favor of the plaintiffs and for the reasons herein stated, the judgment appealed from is affirmed at the costs of the defendant. appellant.